RICHARD S. EGGLESTON, RESPONDENT, *v.* THE PRESIDENT, DIRECTORS AND COMPANY OF THE COLUMBIA TURNPIKE ROAD, APPELLANTS.

*Turnpike company — liability of, for piling stone by the side of the road, in such a manner as to frighten horses.*

The defendant caused a quantity of stones to be piled on the side of its road, near to a bridge, in the reparation of which they were to be used, and allowed them to remain there ; horses of ordinary gentleness were more or less frightened at them, of which fact the defendant had notice.   The plaintiff's mare, which was of a kind and gentle disposition, while being driven by him in a careful and proper manner, came to the bridge, saw the stones, was seized with a sudden fright, jumped from the bridge breaking her leg, and injuring the plaintiff and his wagon.

*Held,* that the defendant was liable for the damages so occasioned.

Upon the trial of such an action, *held,* that the fact could be proved, that other horses of ordinary gentleness were frightened at the pile of stones, as it tended to show that it presented an unusual and strange appearance.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

*Gaul & Esselstyn,* for the appellants.

*P. M. Jordan,* for the respondent.

BOCKES, J. :

This case was carefully and elaborately argued by counsel, both orally, and on their printed brief and points, but as the law, applicable to the case, is familiar and undisputed on most of the questions in it, there is no necessity, as we think, to do more than bring prominently forward a few of the leading and, as we believe, controlling features of it.   The referee found that a short time prior to the injury complained of the defendants' bridge, or culvert across its roadway, got out of repair, and thereupon the defendants caused a quantity of stone to be deposited upon the margin of the road, fifteen or twenty feet from the upper center of the end of the bridge or culvert, for the purpose of being used in its requisite reparation ; that they remained there, without any notice or sign to indicate their presence to travelers on the road, until the happening of the injury ; that, in the meantime, horses of ordinary gentleness were more or less frightened by the stones while passing in the usual way of travel, of which fact the defendant had notice, but nothing was done to avoid or prevent the continuance of such occurrences ; that the plaintiff was driving his mare before a skeleton wagon along the road when, upon coming up to the bridge, she saw the stones, became seized with sudden fright, and almost instantly sprang over the end of the bridge, falling into the stream below, whereby one of her legs was broken and she was rendered worthless, the wagon was damaged and the plaintiff injured.   The referee also found that the mare was of a kind and gentle disposition ; that the plaintiff was an experienced and careful driver ; and that the injuries complained of happened without appreciable fault or negligence on his part.   It was further found, if the fact be of any importance in the case, that the ends of the bridge or culvert were not protected by guards or railings.

On looking into the case it will be seen that the above findings of fact are sustained by the proof submitted on the trial. Indeed, in regard to most of them there was no controversy. Nor is it denied that the defendants were bound to keep the road in ordinary good repair for general travel.   The defendants owned the turnpike franchise, had the highway in charge at the time of the occurrence, and collected toll from travelers upon it.   They had assumed an obligation to maintain it in a suitable and reason

ably safe condition for public travel. The claim of liability in this case, therefore, seems to resolve itself very much, if not entirely, into a question of fact. The immediate injury was caused by the fright and consequent sudden action of the mare; and the fright was occasioned by the stone left upon the margin of the road by the defendants direction, and they had remained there for several days, prior to the occurrence, to the knowledge of the defendants' agent, who had the road in charge. The question then to be determined was whether the stone incumbered the highway, making it dangerous for public travel. Whatever so incumbers a public highway is a defect, and if injury result from it, liability will attach therefor to any party whose duty it is to remove or correct it. An omission of such duty, or willful inattention to it, is negligence. The party bound to the duty must see to it, that ordinary travel upon a highway is made convenient and reasonably safe to the traveler. The more common cause of injury and liability are structural defects, or omissions to repair the road-bed; but a road may also be rendered unsafe, with consequent liability therefor, by unsightly objects placed, or permitted to remain upon it, which are calculated to frighten animals employed by travelers thereon. (*Dimock* v. *Suffield*, 30 Conn., 129; *Winship* v. *Enfield*, 42 New Hamp., 197; *Chamberlain* v. *Enfield*, 43 id., 356; Sherm. & Red. on Neg., sec., 388 [2d ed.] and cases there cited; *Bartlett* v. *Hooksett*, 48 N. Hamp., 18; *Morse* v. *Richmond*, 41 Vt., 435; see, also, 8 Am. Law Reg., 81, note to this case by REDFIELD, J.; *Foshay* v. *Glen Haven*, 25 Wis., 288; *Stone* v. *Hubbardston*, 100 Mass., 49; 18 Alb. Law Jour., 303, 382.) And this is so, although the object causing the fright be on the margin of the road entirely out of the traveled track. (*Winship* v. *Enfield; Morse* v. *Richmond* (*supra*.) In the last case cited it was held that duty to travelers required the removal from the margin of highways of objects which, by their frightful appearances, made it unsafe to travel the road with horses of ordinary gentleness. It is urged here, however, that the stone were lawfully where they were placed and where they were allowed to remain; and that this fact makes a difference in the application of the law to this case. But in such case the question will be, whether the obstruction to the safety of general travel was

both necessary and proper.   In the case in hand, were the stones necessarily placed and permitted to remain where they were placed, and was it *proper* to leave them there presenting a frightful appearance, calculated to frighten ordinarily gentle horses, for so long a time as they were allowed to remain.

It is a well-settled rule that care must be taken, while the work of repairing a highway is in progress, to prevent injuries to passengers therefrom ; and it is negligence to omit proper warnings by barriers, lights, etc., with a view to the safety of public travel ; so, objects calculated to frighten horses of ordinary gentleness, if necessary to be employed in the work of reparation, should be so hidden or concealed as to be harmless to careful, prudent travelers.   Those were questions of fact, and the referee has found against the defendants on them, on what must be deemed sufficient evidence. For anything that appears the stone might have been placed at a point, perfectly convenient for their use in the reparation of the bridge, where their appearance would not have rendered the travel along the road unsafe from any cause connected with them ; and the affirmative proof is, that they were, in fact, placed so peculiarly as not to be observed by the traveler, until almost upon them, and that they presented an appearance, when coming to notice, calculated to frighten gentle horses, and, did in fact, repeatedly have that effect.   The absence of railings or fenders at the ends of the bridge is not deemed of importance in this case, as it is entirely manifest that the proximate cause of the injury was the fright of the mare occasioned by the appearance of the stone. The cause of the fright was the cause of the injury, nor can it be maintained that the defendants were uninformed of the obstruction complained of.   The defendants directed the drawing of the stone for the reparation of the bridge ; and their agent or employee, who had the road in charge, was informed of the fact that they had been left near the bridge for use ; and it may be here added, that such agent was also informed of the dangerous character of the obstruction a considerable period of time before the injury complained of occurred.   The knowledge of the agent was notice to the defendants.   The defendants' counsel is unquestionably correct in his proposition, that the burden of proof was on the plaintiff to establish affirmatively that the injury complained of resulted from

the negligence of the defendants, without the fault of the plaintiff in any respect contributing thereto. The referee has found against the defendants on this proposition, and, as we conclude, so found on sufficient proof to sustain the finding.

Numerous exceptions were interposed to the findings of the referee, and also to his refusal to find as requested. But we are of the opinion that none of those exceptions are of such importance, as to require a reversal of the judgment. He found very fully, and as we think, upon every material point in issue in the case, and we are satisfied with his conclusions certified in the record. His refusals to find otherwise, or more fully than he did find, present, as we think, no substantial ground of error. As to the exceptions taken to the rulings of the referee on questions of evidence, we are of the opinion that no error exists calling for a new trial. It was competent to prove that other horses of ordinary gentleness were frightened by the stone. This was a fact tending to prove that the stone presented an unusual, strange and frightful appearance as they were placed, and where they were permitted to remain.

The objection to the question put to the witness, Robinson, whether in his judgment the pile of stone was of such a character, appearance and location, as would be likely to cause horses of ordinary gentleness to take fright, should have been sustained, had the ground of objection been sufficiently specific. But the ground of objection, that the question called but for an opinion, was not stated; and we must assume that, had the objection been specifically taken, so as to have called the attention of the referee to the precise point, it would have been sustained. Besides taking all the proof submitted to the referee into consideration, it is quite manifest that the answer given to the question did the defendant no harm in fact.

On the whole, we conclude that the record discloses no error calling for a reversal of the judgment, and that the judgment should be affirmed, with costs.

LEARNED, P. J., and BOARDMAN, J., concurred.

Judgment affirmed, with costs.